UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BELL HELICOPTER TEXTRON, INC., a Delaware corporation,  Plaintiff, v. HELICOMB INTERNATIONAL INC., an Oklahoma corporation, and ROBERT R. AUSTIN, an individual,  Defendants. | Case No. 05-CV-0322-CVE-FHM |

**OPINION AND ORDER**

Now before the Court is the motion for preliminary injunction (Dkt. # 6) filed by plaintiff Bell Helicopter Textron, Inc. ("Bell"). On July 7, 2005, the Court denied the motion for preliminary injunction, and immediately dissolved the temporary restraining order that had been entered against defendant Helicomb International, Inc. ("Helicomb") on June 27, 2005. The following constitutes a written order memorializing the Court's decision.

**I.**

On June 9, 2005, plaintiff Bell filed a complaint alleging that Helicomb was engaged in trademark counterfeiting of helicopter parts in violation of sections 32 and 43 of the Lanham Act, 15 U.S.C. §§ 1114 and 1125. Bell is the largest manufacturer of helicopters in the United States, and has been in the commercial rotorcraft business since 1946. The parties stipulate, for the purposes of this motion only, that Bell has registered the trademarks Bell and "bh" (which appears in a circle), and model numbers 204, 205, 206, 212, 214, and 412 for use with its aircraft and aircraft components.

Helicomb has been in the business of both repairing and manufacturing aviation parts for twenty-four years, for both military and commercial applications. Helicomb is a Federal Aviation Administration ("FAA") approved manufacturer for certain aftermarket parts for Bell helicopters and an FAA approved repair station for Bell and Sikorsky helicopter parts. A repairer of helicopter parts requires no license from the manufacturer to perform repairs on that manufacturer's parts, though repairers are subject to extensive regulation by the FAA. As per U.S. military requirements, Helicomb places its name, but Bell's part number, on the parts it manufactures for the military's Bell helicopters. Helicomb's repair procedures (many of which are considered major repairs) are approved by the FAA. Anytime Helicomb repairs an original equipment manufacturer ("OEM") part, it attaches a data tag first identifying itself as the repairer, then listing the original part number, the work order number, the original serial number, and the date of repair. The part is then returned to the customer with documentation regarding the repairs made.

Bell alleges two types of counterfeiting activity. First, Bell alleges that Helicomb maintains an inventory of parts including parts bearing Bell registered trademarks, part numbers, and serial numbers, and advertised using Bell registered trademarks, which were never manufactured or authorized by Bell. Bell alleges that Helicomb trades these parts for damaged genuine Bell parts and cash. Second, Bell alleges that Helicomb sells counterfeit parts under the guise of performing repairs on damaged Bell parts by building new helicopter parts and affixing Bell part numbers, serial numbers, and trademarks. In support of these allegations, Bell offers evidence, gathered by way of a private sting operation, of two incidents in which damaged parts were sent to Helicomb for repair or replacement with a genuine Bell part, and in which Bell's expert's reports conclude that the parts returned had not been originally manufactured by Bell.

Bell asked the Court for an ex parte seizure order pursuant to 15 U.S.C. § 1116(d). The Court denied this, but granted a no-notice temporary restraining order instead, based on Bell's representations in its pleadings and at a hearing on June 13, 2005. The temporary restraining order was entered on June 27, 2005. Defendants were served on June 29, 2005. On July 1, 2005, Helicomb moved to have the temporary restraining order dissolved, arguing that the order had been wrongfully entered and asserting irreparable harm. The order was slightly modified as the result of an initial hearing before United States Magistrate Judge Frank McCarthy, and further modified and clarified through a telephonic hearing before this Court on July 5, 2005. The hearing on the motion for preliminary injunction (Dkt. # 6) took place on July 7, 2005.

## II.

"Because a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal." Dominion Video Satellite, Inc. v. Echostar Satellite Corporation, 269 F.3d 1149, 1155 (10th Cir. 2001). To obtain a preliminary injunction, the movant bears the burden of showing: (1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect

the public interest. Id.; Fed. Lands Legal Consortium v. United States, 195 F.3d 1190, 1194 (10th Cir. 1999).[1]

### A. Success on the Merits

To succeed on the merits with its claim for trademark infringement, Bell must show (1) that it is the owner of protectable marks; (2) that defendant used reproductions, counterfeits, copies, or colorable imitations of those marks in connection with the sale, offering for sale, distribution, or advertising of any goods or services; and that (3) such use is likely to cause confusion or mistake, or to deceive. 15 U.S.C. 1114(1)(a). For the purposes of the preliminary injunction only, the parties have stipulated that Bell owns the marks at issue. Defendant does not dispute that certain Bell marks appeared upon the two parts Bell sent (through an intermediary) to Helicomb for repair. Two issues remain: (1) whether the use of such marks in the course of repair procedures constitutes "use in commerce" for the purposes of the Lanham Act; and (2) whether such use is likely to cause confusion or mistake, or to deceive.

---

[1] Certain preliminary injunctions are disfavored in the Tenth Circuit. O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft, 389 F.3d 973, 975 (10th Cir. 2004). A heightened burden applies to preliminary injunctions that: (1) disturb the status quo; (2) are mandatory rather than prohibitory; or (3) provide movant substantially all the relief it could feasibly obtain after a full trial on the merits. Id. The heightened burden requires that the traditional four factors be "more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." Id. In this case, plaintiffs seek actual and punitive damages in addition to their request for an injunction. For this reason, a preliminary injunction temporarily halting Helicomb's repair of certain Bell parts would not provide Bell substantially all the relief it could feasibly obtain after a full trial on the merits. However, because the requested preliminary injunction would put a stop to a significant fraction of defendant's repair business, this might be a case in which the preliminary injunction could be said to change the status quo. Since the Court finds that, even under the lower standard for preliminary injunctions, plaintiff fails to meet its burden for the issuance of an injunction, the Court does not reach the issue.

**1. Use in Commerce**

A mark is in "use in commerce," for the purposes of the Lanham Act, when : (1) the mark has been placed on the goods or their containers, labels, or the documents associated with the goods or their sale; and (2) the goods are "sold or transported in commerce." 15 U.S.C. § 1127; Karl Storz Endoscopy-America, Inc. v. Surgical Technologies, Inc., 285 F.3d 848, 855 (9th Cir. 2002). "[U]se in commerce appears to contemplate a trading upon the goodwill of or association with the trademark holder. Karl Storz, 285 F.3d at 855. So, the question becomes "whether the trademarked product is so altered that the substance of the transaction is a sale, and it would be misleading to sell the product without noting the alterations." Id. at 856 (citing Champion Spark Plug Co. v. Sanders, 331 U.S. 125, 129 (1947)).

The Supreme Court has clarified that the repair or reconditioning of a trademarked product will not rise to the level of a Lanham Act violation as long as it is made clear that the product has been repaired. Champion Spark Plug, 331 U.S. at 129 (repair or reconditioning of spark plugs merely restores them, as closely as possible, to their original condition rather than giving them a new design and so is not a infringement on manufacturer's mark). Further, "a mere repair of a trademarked good, followed by return of the good to the same owner who requested the repair or rebuild, does not constitute a 'use in commerce' of the trademark under the Lanham Act" unless the product is so altered as to be a different product from that of the original manufacturer. Karl Storz, 285 F.3d at 855-56; see also U.S. Surgical Corp. v. Orris, Inc., 5 F. Supp. 2d 1201, 1209 (D. Kan. 1998).

The issue of trademark use in commerce in the aviation industry, because that industry is so highly regulated, must be analyzed differently than in typical unregulated industries such as handbag

manufacture or wristwatch repair. The FAA regulates and oversees all aspects of aircraft maintenance. It has specifically defined what constitutes a repair as opposed to an alteration. FAA regulations define an alteration as any process that "might appreciably affect weight, balance, structural strength, performance, power plant operation, flight characteristics, or other qualities affecting airworthiness." 14 C.F.R. § 1.1. Any process that does not appreciably affect these qualities the FAA deems to be a repair. The FAA has reviewed, analyzed and approved the processes used by Helicomb, and has particularly defined them as repairs, not alterations.[2] For these reasons, the Court finds that Helicomb's use of the Bell marks in the data tags it places on repaired Bell parts is not a use in commerce for the purposes of the Lanham Act.

## 2. Confusion

Even if the use of Bell marks on the repair part data tags were a use in commerce, Bell has failed to show that such use would result any confusion, mistake or deception of helicopter part consumers. First, Bell has failed to identify a single example of actual confusion caused by Helicomb's operations. Second, Bell's theories about how the Helicomb repair procedures at issue are likely to cause confusion are against the weight of the evidence before the Court.

To prevail on its Lanham Act claims, Bell must demonstrate a "probability, not just a possibility, of confusion." U.S. Surgical Corp, 5 F. Supp. 2d at 1209. The law requires "a showing that the allegedly infringing conduct carries with it a likelihood of confounding an appreciable number of reasonably prudent purchases exercising ordinary care." Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Winship Green Nursing Ctr., 103 F.3d 196, 201 (1st Cir. 1996).

---

[2] As defendant has pointed out, if Bell believed the FAA's designation of Helicomb's processes not only as repairs, but as safe, effective, and appropriate repairs, was incorrect, it should have brought this to the attention of the FAA. Bell has not done so.

Likelihood of confusion exists when "consumers are likely to assume that a mark is associated with another source." Karl Storz, 285 F.3d at 854.  The Tenth Circuit has further explained that "[c]onfusion occurs when consumers make an incorrect mental association between the involved commercial products or their producers." Jordache Enterprises, Inc. v. Hogg Wyld, Ltd., 828 F.2d 1482, 1484 (10th Cir. 1987) (quoting San Francisco Arts & Athletics, Inc. v. United States Olympic Comm., 483 U.S. 522 (1987)).   The Tenth Circuit lists the following factors to be considered, among others: (1) the degree of similarity between the marks; (2) the intent of the alleged infringer in adopting its mark; (3) evidence of actual confusion; (4) similarity of products and manner of marketing; (5) the degree of care likely to be exercised by purchasers; and (6) the strength or weakness of the marks.  Sally Beauty Co., Inc. v. Beautyco, Inc., 304 F.3d 964, 972 (10th Cir. 2002). Generally, "any meaningful inquiry into the likelihood of confusion necessarily must replicate the circumstances in which the ordinary consumer actually confronts (or probably will confront) the conflicting mark."  Winship Green Nursing Ctr., 103 F.3d at  201; see also Beer Nuts, Inc. v. Clover Club Foods Co., 805 F.2d 920, 925 (10th Cir. 1986).

In the case of Helicomb's repair of helicopter parts, the marks, because they were originally placed on the parts by Bell, are identical to Bell marks, and were not adopted by defendants but rather replaced on the parts after repair as part of FAA regulations requiring complete histories of part manufacture and maintenance.  Plaintiff has presented no evidence of actual confusion.  In fact, plaintiff's technical witnesses Chad Ford and Don Maguire testified that they were not confused by the data tags, and understood the parts to be marked as Bell OEM parts that had been repaired by Helicomb.

7

Further, three particular circumstances weigh significantly against the possibility of confusion. First, part of Helicomb's repair business is structured in such a way that it receives parts from their owners and returns them to their owners, as in the case of the first part sent (through an intermediary) to Helicomb by Bell. This leaves very little possibility for confusion as to the history of the part.

Second, even for those repaired Bell parts Helicomb sends to customers in exchange for damaged Bell parts, the documentation Helicomb produces for each repair it performs makes it unlikely that owners and aviation personnel who work with repaired parts will be confused. Any repaired part sent to a customer, either as a direct repair or as an exchange, is accompanied by an FAA form 8130-3 which again describes the repair work performed and provides contact information for the repairer. Defendant's Brief (Dkt. # 30) at 18. Anyone who receives a form 8130-3 with a part would immediately know that repair work had been done and could contact the repairer if any clarification as to the actual repairs performed were necessary. According to FAA regulations, these forms should follow the part. See Summary Judgment Order of August 15, 2003 in Bell Helicopter Textron, Inc. v. H-S Tool and Parts, Inc. et al., Case No. C02-1295C at 11, ll. 17-18 (W.D. Wash. 2003) (settled while on appeal). However, even if a consumer were not to see the accompanying paperwork, the very data tag about which plaintiff complains offers a clear indication, through the inclusion of a work order number and Helicomb's name at the top, that the part has been repaired, and by whom.

Finally, purchasers of these helicopter parts are likely to exercise extreme care in such purchases. Aircraft parts are consumed when they are installed in an appropriate aircraft. The installation of parts in an aircraft such as a helicopter may only be performed by a person with an

FAA certificate, or a person working directly under the supervision of an FAA certified mechanic. See 14 C.F.R § 43.3. Installers of parts are required to have a high degree of sophistication and knowledge. 14 C.F.R. § 65.75. The Court finds that persons with such a degree of sophistication and knowledge are unlikely to be confused by the data tags and documentation used by Helicomb as part of its repair procedure.

The Court finds that Bell has failed to show how this use of its marks is likely to cause consumer confusion regarding Bell's long established engineering and quality standards. Accordingly, the Court finds that Bell has failed to show that it is likely to succeed on the merits of its trademark infringement claim.[3]

### B. Immediate and Irreparable Injury

"Courts have held that both potential damage to reputation and likelihood of confusion constitute irreparable injury . . . [such that] [i]mmediate and irreparable injury will not ordinarily be a difficult showing in a counterfeit case. Vuitton v. White, 945 F.2d 569, 576 (3d Cir. 1991) (citing Opticians Assn. v. Independent Opticians, 920 F.2d 187, 195-96 (3d Cir.1990)). Courts have consistently held that the distribution of infringing goods constitutes irreparable injury sufficient to order preliminary relief. Id. This argument is only strengthened in the case of marks that, more than merely infringing, are actually counterfeit marks. Id. Further, injuries are presumed irreparable in

---

[3] The Court points out that Bell brought an essentially identical action against repairers of helicopter parts in the United States District Court for the Western District of Washington. The Court in that case granted summary judgment for defendants on similar grounds to those outlined herein. See Summary Judgment Order of August 15, 2003 in Bell Helicopter Textron, Inc. v. H-S Tool and Parts, Inc. et al., Case No. C02-1295C (W.D. Wash. 2003) (settled while on appeal). None of the special circumstances presented by the aircraft industry in trademark infringement cases were brought to the Court's attention in the course of its deliberations regarding the issuance of the no-notice temporary restraining order.

trademark infringement cases because of the difficulty of "ascertain[ing] the precise economic consequences of intangible harms, such as damage to reputation and loss of goodwill." Abbot Laboratories v. Mead Johnson & Co., 971 F.2d 6, 16 (7th Cir. 1992).

However, Bell has failed to show that Helicomb's use of Bell marks on the data tags of the Bell parts it repairs is likely to cause any confusion among consumers of helicopter parts, such consumers being required by the FAA to be well-informed and sophisticated in their use of such parts. Thus, it is also unlikely that the sale of such merchandise bearing a these Bell marks will result in any immediate and irreparable injury to Bell. The Court finds that Bell has offered insufficient evidence of either confusion or damage to reputation to satisfy this requirement for a preliminary injunction.

### C. Balancing of Harms

"In considering a motion for preliminary injunction, the court must examine whether the injury to the plaintiff outweighs the harm which granting the injunctive relief would inflict on the defendant." Packerware Corp. v. Corning Consumer Products Co., 895 F. Supp. 1438, 1453 (D. Kan. 1995). An injunction should be denied where the evidence establishes that an injunction would weigh heavily on defendant, but where its denial would only cause minor inconvenience to plaintiff. Prime Media, Inc. v. Premedia, Inc., 33 F. Supp. 2d. 932, 940-41 (D. Kan. 1998); Packerware, 895 F. Supp. at 1438; see also Puritan Sportswear Corp. v. Puritan Fashions Corp., 232 F. Supp 550 (S.D.N.Y. 1964) (plaintiff bringing trademark infringement claim not entitled to injunctive relief when failed to show likelihood of confusion of goods, irreparable harm, and where potential loss to defendant from granting injunctive relief would outweigh any benefits plaintiff might derive therefrom).

Because there is such a small likelihood of harm to Bell resulting from the sale of repaired parts bearing the Bell marks, as described herein, the potential harm to Helicomb resulting from the essentially complete shutdown of its Bell parts repair and refurbishment business clearly outweighs the potential harm to Bell if no preliminary injunction is ordered. Accordingly, the balance tips in favor of defendant Helicomb.

### D. Public Interest

Finally, plaintiff must show clearly and unequivocally that if issued, an injunction would not adversely affect the public interest. Enactment of the Lanham Act indicates a recognition of the significant public interest in controlling trademark infringement. However, it is insufficiently clear, in this case, that any counterfeiting is taking place to invoke any public interest on this point. Further, the public also has an interest in the continued servicing of helicopter parts by Helicomb. Thus, the requested preliminary injunction in this case could well adversely affect the public interest.

### III.

Bell has failed to meet each of the four requirements prerequisite to the issuance of a preliminary injunction: (1) it has failed to show a probability of success on the merits of its trademark infringement claims; (2) it has failed to show irreparable harm to Bell will result from a failure to issue an injunction; (3) it has failed to show that the harm to Bell from failure to issue the injunction would outweigh the harm to Helicomb if it is issued; and finally, (4) it has failed to show that issuance of an injunction would not adversely affect the public interest.

**IT IS THEREFORE ORDERED** that the motion for preliminary injunction (Dkt. # 6) is **denied** and the temporary restraining order imposed based solely upon the pleadings submitted by Bell is dissolved, effective as of July 7, 2005, as ordered by the Court on that date.

**DATED** this 14th day of July, 2005.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT